NOTICE
Decision filed 08/11/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260427-U

NO. 5-26-0427

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-153 |
| | ) | |
| BRIANNA M. PINO, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CLARKE delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We reverse and remand the detention order where the specific facts of the case, as presented by the State, did not support a finding of dangerousness as required for the defendant's pretrial detention.

¶ 2    The defendant, Brianna M. Pino, appeals the Jefferson County circuit court's May 5, 2026, order granting the State's petition to deny pretrial release, and the May 13, 2026, denial of her motion for relief. For the following reasons, we reverse and remand with directions.

¶ 3                                I. BACKGROUND

¶ 4    On May 4, 2026, the defendant was charged with unlawful methamphetamine conspiracy, a Class X felony, in that the defendant, with the intent to commit unlawful delivery of methamphetamine (720 ILCS 646/55(a)(1) (West 2024)), agreed with Timothy Kempf and Kendall Degrave to deliver a substance containing methamphetamine to Michael Clarida, and that

1

the defendant obtained 100 or more, but less than 400, grams of a substance containing methamphetamine so that delivery could be and was in fact made to Clarida (*id.* § 65(a)). The same day, the State filed a verified petition to detain, alleging that the defendant was charged with a felony for which a sentence of imprisonment was required by law upon conviction, and the defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community.

¶ 5 The matter proceeded to a hearing on May 5, 2026. The State proceeded by proffer, stating that Deputy Harris, Deputy Mueckenheim, and Detective Johnson of the Jefferson County Sheriff's Department and Detective Hails of the Mt. Vernon Police Department would collectively testify to the following. On May 3, at approximately 11:30 p.m., Harris was notified by Mueckenheim of a suspicious vehicle in the lot of a Huck's gas station in Mt. Vernon, Illinois. Mueckenheim discovered that the vehicle, a white Chevrolet Camaro, was registered to the defendant, and she had a "cancelled driver's license." Mueckenheim observed a person exiting the Camaro and going to another vehicle, a Sonata, on the other side of the gas station, which then drove around to the back side of the gas station. Harris initially observed the Sonata pull to the edge of the parking lot, but he was unable to position himself behind the vehicle. When the Sonata left, Harris was able to position himself behind the vehicle, where he observed that the Sonata did not have a registration light, which was required by statute, and that the Sonata crossed the fog line on the right side of the roadway. Harris initiated a traffic stop of the Sonata. The driver was Michael Clarida, who displayed "suspicious behavior," including failure to maintain eye contact, shallow breathing, and a noticeable pulse in his chest visible through his clothing.

¶ 6 Clarida exited the vehicle at Harris's request but denied a search of the vehicle. Sergeant Pendley arrived on the scene with his K9 partner, which resulted in a "hit for the presence of

narcotics" from the K9. Officers then conducted a search of the vehicle, discovering a large, clear plastic bag with a substance that field tested positive for methamphetamine and weighed 114.7 grams, including the bag.

¶ 7   During Harris's stop of Clarida, Mueckenheim continued to observe the Camaro and initiated a traffic stop to confirm that the driver was the individual with a cancelled license. The occupants of the vehicle got out, and Pendley's K9 partner conducted a free-air sniff on the Camaro, which resulted in a positive alert. During a search of the Camaro, officers discovered a silver scale and a black scale with a substance on them, which field tested positive for methamphetamine. Officers also discovered brass knuckles in the vehicle.

¶ 8   Hails conducted an interview with the defendant. After receiving her *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)), the defendant informed Hails that her codefendant, Degrave, asked the defendant to pick up her and a friend, later identified as codefendant Kempf, in Belleville and drive him to Mt. Vernon in exchange for gas money. After the defendant picked up Kempf, Degrave told the defendant that Kempf had four ounces of methamphetamine and they were going to deliver it to Clarida, in addition to some methamphetamine that Degrave and the defendant purchased in St. Louis, Missouri, before picking up Kempf. The methamphetamine was combined and delivered by Degrave to Clarida at the gas station. This information was corroborated by the information found on the defendant's phone, discussing "eight grams of methamphetamine and obtaining a whole ounce to mix with it to be transported for delivery."

¶ 9   The State said that the delivery of a large amount of methamphetamine for either personal use or redistribution presented a clear and present threat to the individuals within the Mt. Vernon community, specifically to Clarida. The State said, "It is a scourge in our community for it to be brought from other areas and other states and delivered into our community is clearly a problem."

3

The defendant's criminal history included convictions for felony theft, driving on a suspended license, and possession of a controlled substance. The defendant served two sentences in the Illinois Department of Corrections (IDOC) for felony theft and possession of methamphetamine. The defendant did not reside in Jefferson County and did not have any ties to the area, as she and her family lived in Collinsville. The State asked that the defendant be detained.

¶ 10　Defense counsel proffered that the defendant was 29 years old and lived in Collinsville, Illinois. She graduated from high school and completed two years of college. She was employed. She was not on probation, bond, pretrial release, parole, or work release. She did not have a record of failure to appear at court proceedings. Further, there were no injuries or weapons alleged. Defense counsel asked for the defendant's release on home confinement with electronic monitoring.

¶ 11　The circuit court stated it considered several factors in the defendant's favor, including her education, employment, and that she was not on any form of court supervision. Further, the court said, "[T]his offense, as egregious as it is, does not involve violence or weapons." The court stated that the defendant's criminal history was "pretty poor" given her age, including six felony convictions and time served in IDOC. Further, she did not have any ties to the community. The court said the nature of the offense was a serious drug offense and that there was not "any drug worse than methamphetamine ***. It's terrible stuff. It's entered into our community and done so much damage; not just this community but every community, and a tremendous amount of damage to people's lives and in some cases their health." The State also presented a "strong case" based on its proffer. The court said the offense was "a very, very highly dangerous offense, dangerous to the community, dangerous to you and the people you were with." Further, the court was "not convinced that any condition or combination of conditions could be met to assure this court that

4

you would appear in court when you are supposed to and not violate the law." The circuit court granted the State's petition. The court entered a written order the same day, finding that the defendant posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate that threat. The order included that the court based its decision on the following facts: "Delivery of methamphetamine to the local community from the St[.] Louis area presents a threat to the community."

¶ 12    Defense counsel filed a motion for relief and immediate release on May 8, 2026. The motion stated that the circuit court erred in granting the State's petition. Specifically, the circuit court failed to consider the defendant's willingness to abide by any terms of pretrial release, that no weapon was used in the commission of the alleged offense, that no injuries resulted from the alleged offense, and the defendant's employment opportunities.

¶ 13    The matter proceeded to a hearing on May 13, 2026. Defense counsel again provided the factual proffer from the initial detention hearing. Defense counsel asked for the defendant's release on home confinement with electronic monitoring, either at her home or with her mother in Collinsville. The State proceeded by proffer, with the court taking judicial notice of the factual proffer provided during the initial hearing. The State said that the defendant was the driver in this case, providing transportation to St. Louis, picking up Kempf, and driving him and Degrave back to Mt. Vernon. The text messages between the defendant and Degrave showed that the defendant "was well aware of what she was doing." The State asserted that the defendant brought methamphetamine into the community from the St. Louis area, which was "quite surreal." Further, the defendant did not have any ties to the community, and she had several convictions in her criminal history. Her offenses included felony retail theft and possession of controlled substances, including possession of methamphetamine. At the time of the offense, the defendant was driving,

5

even though she did not have a driver's license. The State said that it met its burden of proof that there were not any conditions or set of conditions that would ensure the safety of the people of the community. The State asked for the defendant to remain detained.

¶ 14    The circuit court stated the same factors it considered in the defendant's favor, including her education, employment, and that no weapon was used. The court stated that the offense was "very serious" and the State's case was "pretty, pretty, pretty strong." Further, the defendant's criminal history was "pretty bad" considering her age. The defendant also had no ties to the area. The court said that the defendant was "a major player in this enterprise being the driver" and she was "certainly aware of what was going on." The circuit court denied the defendant's motion for relief.

¶ 15                                II. ANALYSIS

¶ 16    The defendant appealed. On appeal, she argues that the State failed to prove by clear and convincing evidence that the defendant posed a real and present threat to the community, and that no conditions could mitigate that threat. We agree.

¶ 17    Our standard of review of pretrial release determinations is dependent on whether the circuit court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Because the parties proceeded solely by proffer, our review is *de novo*.

¶ 18    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial

6

Fairness Act. Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024). If the State files a petition requesting denial of pretrial release,

> "the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of [another] person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7.

See 725 ILCS 5/110-6.1(e), (f) (West 2024). Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12.

¶ 19    The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. These include the following:

> "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.
>
> (2) The history and characteristics of the defendant including:
>
> (A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may

7

include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024).

8

No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 20    The defendant argues that the State failed to prove a real and present threat because it proffered no evidence of a specific threat of harm to a person or society upon release. See *People v. Nicholson*, 2024 IL App (2d) 240257-U, ¶ 17. We agree with defendant that *Nicholson* is instructive in the present case. The defendant in *Nicholson* was charged with trafficking 1,020 grams of methamphetamine into Illinois, and the trial court detained him for the "quantity of these drugs, *** over a thousand grams of methamphetamine." (Internal quotation marks omitted.) *Id.* ¶ 9. The appellate court reversed pretrial detention in *Nicholson*, finding,

> "by basing its dangerousness finding solely on defendant's transport of a certain weight of methamphetamine across state lines, the court erroneously 'substituted a finding that the proof was evident or the presumption great that defendant committed the alleged offense for a finding that defendant['s release] posed a real and present threat to the community.' "
>
> *Id.* ¶ 17 (quoting *People v. Drew*, 2024 IL App (2d) 230606-U, ¶ 18).

¶ 21    The State focused its argument during the detention hearing on the methamphetamine brought into the community and the danger presented from it, calling it a "scourge" to be brought into the community. The circuit court in its oral pronouncements did address the defendant's criminal history, but primarily focused on the methamphetamine brought into the community and the danger of the drug itself.

¶ 22    As part of our *de novo* review, we have conducted our own independent review of the proffered evidence and the relevant factors. The defendant was not charged with a crime of violence, involving a weapon, or a sex offense. 725 ILCS 5/110-6.1(g)(1) (West 2024). The

9

defendant's history was not indicative of violent, abusive, or assaultive behavior. *Id.* § 110-6.1(g)(2). While the defendant did have previous convictions, none of them involved violence. The State did not identify any specific victims to whom the defendant posed a threat, but instead focused on the generalized risk to the community. *Id.* § 110-6.1(g)(3). The State did not present any evidence that the defendant possessed or had access to weapons. *Id.* § 110-6.1(g)(7). Further, she was not on probation at the time of the offense. *Id.* § 110-6.1(g)(8).

¶ 23    Despite all these factors, the circuit court still detained defendant. In its written order, the circuit court stated that the defendant's detention was based on the "[d]elivery of methamphetamine to the local community from the St[.] Louis area presents a threat to the community." The reasons listed on the order and stated during the detention hearing were a recitation of the elements of the offense alone.

¶ 24    Specific evidence of dangerousness *must* be presented and considered, aside from a recitation of the charges a defendant faces. See *Stock*, 2023 IL App (1st) 231753, ¶ 18 ("the bare allegations" of an offense are not sufficient to establish a real and present threat). The State did not present any facts or evidence outside of the elements of the offense itself. The circuit court based its detention finding on the "threat to the community" based on the charge, not based upon factors enumerated in the statute to prove a real and present threat. Thus, it was error for the circuit court to find that the defendant posed a real and present threat based on the applicable factors and specific facts of this case. We reverse the circuit court's detention order and remand so the circuit court may order appropriate conditions of release.

¶ 25                                    III. CONCLUSION

¶ 26    We reverse the detention order of Jefferson County circuit court and remand for further proceedings consistent with this order.

10

¶ 27    Reversed and remanded with directions.